THE UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF ILLINOIS

CHICAGO DIVISION

| | | |
|---|---|---|
| COZETTE BURCY | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:19-cv-4026** |
| **v.** | ) | |
| | ) | |
| | ) | **Plaintiff Demands Trial By Jury** |
| **BORGWARNER, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | | |

## COMPLAINT

Plaintiff Cozette Burcy, through her undersigned counsel, seeks redress against

Defendant Borgwarner, Inc., (hereinafter "Borgwarner") and states as follow:

1.  Plaintiff Cozette Burcy (hereinafter "Burcy") brings this action

for violations of the Age Discrimination in Employment Act of 1967 and the Family

Medical Leave Act 29 U.S.C. § 2617(a).

2.  Plaintiff seeks declaratory, compensatory, and equitable relief.

3.  This Court has subject matter jurisdiction over Plaintiff's ADEA and FMLA

claims pursuant to 28 U.S.C. § 1331.

4.  Venue in this court is proper for purposes of Plaintiff's ADEA claim

pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events giving

rise to this claim occurred in this judicial district.

5.  Plaintiff Burcy is a citizen of the United States who resides in this

judicial district.

6. Defendant Borgwarner is a private entity operating under the laws of the State of Illinois. At all relevant times, Defendant has been continuously engaged in the manufacturing of mechanical parts in the state of Illinois.

## Administrative Proceedings

7. On April 27, 2018, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and a complaint was simultaneously cross-filed with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based upon her age and retaliation.

8. Plaintiff's EEOC Charge was filed more than sixty (60) days prior to bring this claim. (Attached as "Plaintiff's Exhibit "A")

9. On or about March 22, 2019, Plaintiff received a notice of right to sue from the EEOC on his charge. (Attached as "Plaintiff's Exhibit "B")

10. Plaintiff's age discrimination claim is timely filed within 90 days of the receipt of the notice of "right to sue".

## Factual Allegations Common to All Counts

11. On or about Hired September 10, 1993 Burcy was hired by Borgwarner, Inc., as a high-volume operator.

12. Plaintiff essentially was employed as a machine operator and operated devices that produced friction plates.

13. Plaintiff worked individually and monitored two machines at a time.

14. During Plaintiff's employment, she worked both days and nights.

15. As part of her employment and performance, Plaintiff routinely received semi-annual and annual bonuses.

16. At no time during Plaintiff's employment was she ever placed on a performance improvement plan nor was she ever cited for a lack of production.

17. Additionally, there was never any complaints about the quality of product that Plaintiff was responsible for producing.

18. In fact, Plaintiff's reliability and skill were so valued that she was routinely asked to work weekends.

19. Plaintiff's former direct supervisor, Steve Waters, referred to her as a "damn good operator".

20. Despite being called a good worker, Plaintiff was asked on multiple occasions how long she planned on working.

21. On at least one occasion Plaintiff was given an award for attendance.

22. At the time that Plaintiff was hired, she earned approximately $13/hour.

23. As a result of her annual increases, Plaintiff earned $20.35/hour at the time of her termination.

24. During Plaintiff's employment, she requested leave to take care of her children. This leave was approved without question.

25. Also, during Plaintiff's employment with Defendant, she requested FMLA to take care of her ailing and ageing mother and father.

26. At no time during Plaintiff's employment did she exhaust her FMLA.

27. Despite being granted leave to care for her parents, Plaintiff was questioned

about how long she planned on working and Plaintiff's age became a subject of human resources communications.

28.   After Plaintiff began using her FMLA to care for her ageing parents, she was called into human resources about her leave.

29. At that time there were accusations that Plaintiff was not entitled to her FMLA and Plaintiff's age was brought up directly as it related to her employment.

30. Plaintiff provided Defendant with the necessary paperwork for the FMLA leave and the issue was allegedly resolved.

31. Plaintiff continued to use her FMLA to care for her parents and was again called into human resources a second time regarding her use of FMLA.

32. Again, Plaintiff brought in paperwork a third time and was told that she was approved and there was no issue.

33. In all, Plaintiff was called into human resources on three separate occasions to discuss dates not accepted for FMLA.

34. On each occasion, human resources alleged different dates that Defendant had a problem with Plaintiff's FMLA leave but was presented documents to dispel those discrepancies.

35. Cigna served as the third-party company handling FMLA leave for the Defendant.

36. Cigna routinely retroactively approved FMLA when Defendant did not properly submit documentation.

37. Defendant routinely requested information from Cigna regarding Plaintiff's

FMLA leave.

38. In September of 2017, it was brought to Plaintiff's attention that an unresolved issue of FMLA was being investigated from November 2016. This alleged issue occurred over a year before.

39. Matthew McConaughey, Defendant's HR representative, called Plaintiff to discuss these tardies.

40. In October of 2017, Plaintiff was advised that she would be "written up" for these alleged tardies and absences from a year before.

41. Plaintiff accepted the write up because she could finally reach some kind of resolution to the situation through an employee dispute process.

42. Defendant accepted this "write-up" sensing that Defendant had grown tired of her taking her protected leave and that her age was a factor in Defendant's illegal motives.

43. On December 5, 2017, Plaintiff was called into the office and terminated.

44. During Plaintiff's termination meeting, Plaintiff explained that all the dates that were in question were covered by FMLA and Aracelia Macel advised Plaintiff that FMLA would cover those dates.

45. Prior to Plaintiff's termination, Plaintiff complained to Regina Dunagin, the Production Manager, about complaints over FMLA discrimination.

46. Plaintiff's termination came as a complete shock as she worked for two decades and was extremely loyal to Defendant.

47. On information and belief, Plaintiff was terminated for taking her

protected leave pursuant to the Family Medical Leave Act.

48.  On information and belief, Plaintiff was retaliated against after complaining of the FMLA discrimination and her age.

49.  Plaintiff's employment environment seemed to change for the worst after she used her FMLA leave to care for elderly parents.

50.  Plaintiff believed she was terminated for taking protected FMLA leave and her age.

## COUNT I
Violation of The Age Discrimination in Employment Act of 1967 as Amended

51.  Plaintiff re-alleges and incorporates by reference paragraphs 1 thru 50 above as if fully set forth herein.

52.  At all relevant times, Defendant was and is an "employer" within the meaning of the ADEA. At all relevant times, Plaintiff was employed by Defendant and was an "employee" of Defendant within the meaning of the ADEA.

53.  Plaintiff filed a charge of discrimination with the EEOC, alleging age discrimination more than sixty (60) days prior to bringing this claim.

54.  Defendant acted intentionally and in bad faith when it terminated Plaintiff from her position because of her age.

55.  Defendant failed to use its own policy in terminating Plaintiff because of her age.

56.  Instead Defendant terminated Plaintiff because of her age.

57.   Defendant, as an employer is subject to the requirements of ADEA.

58.   Defendant, as an employer should not discriminate against its employees because of their age.

59.   Defendant, as an employer, has an obligation to ensure that its employees are not discriminated against based on their age and are not terminated from any position for discriminatory reasons.

60.   Defendant, as an employer, should have an enforceable policy against discrimination including age discrimination.

61.   Defendant violated this policy by discriminating against Burcy based on her age.

62.   By reason of the foregoing, Defendant discriminated against Burcy because of her age in violation of the ADEA of 1967 as amended.

63.   Defendant's conduct has resulted in damages to Plaintiff including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

**Count II**
Retaliation In Violation of Title VII-42 U.S.C. § 2000 et. Seq.

64.   Plaintiff incorporates herein Paragraph 1 through 63 of this Complaint.

65.   At all times herein relevant, Defendant was bound by its common law and statutory duties to keep Plaintiff safe from harm and not to violate her right to be free from an abusive work environment.

66.  Plaintiff Burcy has suffered substantial and enduring emotional

injury.

67.  Defendant knew or should have known, that its failure to protect Burcy from an unlawful termination based on her age would reasonably cause Plaintiff serious injury.

68.  Defendants breached their duty to exercise due care by refusing to provide a working environment free of age discrimination.

69.  As a proximate result of Defendants' acts or omissions as described above, Plaintiff has suffered emotional distress in the form of shame, humiliation, degradation, in an amount to be determined at trial.

**Count III**
(Compensatory Damages Under the FMLA)
29 U.S.C. § 2617(a)

70. Burcy realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 69, inclusive.

71. Burcy is informed and believes, and on that basis alleges, that Borgwarner qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and that Burcy is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

72.  Burcy is informed and believes, and on that basis alleges, that there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1), and that Burcy was denied her entitlement to leave as prescribed in FMLA.

73.  Burcy is informed and believes, and on that basis alleges, that Burcy was entitled to restoration to her position as described in the FMLA, 29 U.S.C. § 2614(1), and

that Burcy was denied restoration to the same or equivalent position as prescribed in FMLA.

74.  Burcy is informed and believes and on that basis alleges that defendant is responsible under the FMLA, 29 U.S.C. § 2617(a).

75.  As the result of Burcy's termination, Burcy has incurred, and is now incurring, a loss of wages, within the meaning of the FMLA, 29 U.S.C. § 2617(a), in an amount to be proved at trial, but believed to exceed $25,000. These costs include, without limitation, lost wages and other costs during Burcy's period of unemployment, back pay from the effective date of termination, and lost employment benefits from the date of termination, the loss of front pay as of the date of this complaint, and any interest on the amount thereon as provided in the FMLA, 29 U.S.C. § 2617. The costs also include attorneys' fees that, as of the date of this complaint, exceed, $10,000.

76.  Burcy is informed and believes, and on that basis alleges, that pursuant to 29 U.S.C. § 2617(a), defendant is liable to Burcy for the costs described in the preceding paragraph.

**Count IV**
(Declaratory Relief For Compensatory Damages Under the FMLA)
29 U.S.C. § 2617(a)

77. Burcy realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 76 above.

78. An actual controversy now exists between Burcy on the one hand, and defendants, on the other, in that Burcy contends that defendant is liable under the

FMLA, 29 U.S.C. § 2617(a), for all lost wages, benefits, and costs to be incurred by Burcy and reinstatement of Burcy to her previous position of high-volume production worker, in connection with the alleged employment discrimination perpetrated by Borgwarner. Burcy is informed and believes, and on that basis alleges, that the defendant contends in all respects to the contrary.

79. A declaration of the rights and obligations of the parties, pursuant to FMLA, 29 U.S.C. § 2617(a), binding in any subsequent action or actions to recover further costs incurred by Burcy, is appropriate and in the interests of justice.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. All wages and benefits Plaintiff would have received but for the ADEA, including but not limited to back pay, front pay, pre-judgment interest, and restoration of job assignments;

B. A permanent injunction enjoining Defendant from engaging in the practices complained of herein;

C. A permanent injunction requiring that Defendant adopt employment practices and policies in accord and conformity with the requirements of the ADEA;

D. All damages Plaintiff is entitled to pursuant to FMLA, 29 U.S.C. § 2617(a).

E. The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. An award of reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

Respectfully Submitted,

/s/ Andre P. Gaston
*Attorney for Plaintiff* COZETTE BURCY

Electronically filed on June 16, 2019
The Law Office of Andre P. Gaston
1901 N. Roselle, Suite 800
Schaumburg, Illinois 60195
Phone: 630-560-3692
Fax: 630-566-0367
Email: andre.gaston@agastonlaw.com